THEODORE S. STEINGUT (TSS4231)
One Whitehall Street
 17th Floor
New York, New York 10004
Tel (212) 514-8888
Fax (212) 514-9016
email: steingutlaw@inch.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X
                                          :
YELENA SEROVA, individually and           :
derivatively on behalf of Allarus         :   05 CV. 6748 (HB)
Technology Management Inc.                 :
                                          :
                                          :
            Plaintiff,                    :   **SECOND**
                                          :   **AMENDED COMPLAINT**
        -against-                         :
                                          :
                                          :
PHILIP H. TEPLEN, MICHAEL EDEN AND        :
BARBRA EDEN                               :
                                          :
                                          :
                                          :
            Defendants.                   :
---------------------------------------- X

     Plaintiff, by and through her attorney, Theodore S.

Steingut, as and for her second amended complaint against

defendant Philip H. Teplen respectfully alleges:

1

**NATURE OT THE ACTION**

1.    Plaintiff brings this case because of the circumstances surrounding her application for an EB-5 visa and investment of $1,162,000 in a company now known as Allarus Technology Management, Inc. ("Allarus").

2.    Plaintiff asserts that defendant Philip Teplen, a New York attorney, breached the professional duties he owed to Ms. Serova and engaged in shameful self-dealing including receipt of nearly $200,000 in undisclosed payments from the principals of Allarus, with whom he had long-standing and undisclosed professional and business relationships.

3.    Teplen's breaches of his professional duties and responsibilities included (i) representing Ms. Serova while at the same time having an on-going personal and professional relationship with Michael Eden ("M. Eden"), with whom Ms. Serova was negotiating a business transaction, (ii) providing ineffective legal advice regarding Ms. Serova's ability to obtain an EB-5 visa;  (iii) providing ineffective legal advice concerning the drafting of a shareholders' agreement covering the investment; and (iv) engaging in

2

undisclosed self dealing with Allarus and its principals, the Edens, including the payments hereinabove mentioned.

4.    Defendant failed to disclose and otherwise omitted to state to Plaintiff in connection with her investment that he had an ongoing business relationship with the principals of Allarus who were to use the proceeds of the investment, *inter alia*, to repay debts owed to Defendant, to pay him a commission for the investment or, as defendant claims, legal fees for representing the Eden family and to jointly lease and outfit office space.

5.    Based on Teplen's advice, Ms. Serova invested approximately $1.2 million in Mr. Eden's business and in legal fees paid to Teplen and applied for an EB-5 visa.  Ms. Serova's investment has been squandered and her visa application was denied.

## JURISDICTION & VENUE

6.    Jurisdiction is proper in this case pursuant to 28 U.S.C. § 1332 (a) (2) in that there is complete diversity of citizenship

between Plaintiff who is a citizen and resident of the Country of Russia and Defendant who is a citizen of the United States and resident of the State of Connecticut and the amount in controversy exceeds $75,000.00.

7.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 in that defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8.    Plaintiff Yelena Serova ("Serova") is a citizen of and resident of the country of Russia.

9.    Defendant Philip H. Teplen ("Teplen") is a resent of the State of Connecticut and an attorney at law whose practice is located in the Empire State Building at 350 Fifth Avenue, New York, New York.

4

## FACTS

### Serova Meets and Retains Teplen

10.    In September 2001, while a student at Touro College, Ms. Serova approached Teplen for advice with regard to her immigration status.  Ms. Serova was interested in obtaining permanent residency in the United States and Teplen, who holds himself out as an expert in immigration matters, stated that Teplen could assist her in obtaining permanent resident status.

11.    Teplen advised Ms. Serova to submit an "EB-5" immigrant investor petition.  Such a petition requires that the petitioner demonstrate that he or she has made a substantial investment in a United States business of at least $500,000.

12.    However, Teplen also advised Serova that the INS looked unfavorably on such small investments. Teplen therefore recommended an investment of over $1 million.

13.    In that regard, and in addition to completing the necessary INS documentation, Ms. Serova engaged Teplen pursuant to a retainer

5

agreement dated October 2, 2001 to "assist in development for acquisition or establishment of business, negotiate transaction, drafting of purchase agreements and shareholder agreements" as well as the visa application itself.

14.   Teplen told Serova at that time and at all times thereafter until the visa application he recommended and submitted was denied that if she invested such an amount, she was virtually certain to obtain an EB-5 visa.  Thus, although the retainer agreement states that Teplen did not guarantee any particular outcome, that provision was superseded by his continuing and persistent representations thereafter which virtually guaranteed such success.

15.   After Ms. Serova expressed interest in such an investment, Teplen stated that Teplen would undertake to find a suitable investment for her.

**Teplen Introduces Serova to Eden**

16.   By early 2002, Teplen had introduced Ms. Serova to Teplen's client and long-time friend Michael Eden with the intention of developing the acquisition identified in the retainer agreement. At that time and at all times thereafter, Teplen and Mr. Eden disclosed only that Mr. Eden was a "friend" of Teplen; defendant failed to disclose that Teplen had in the past represented Eden or his company, Ruppert Technologies Corp.  Mr. Eden was then running Ruppert, a small computer services business which was, once the Serova investment was made, renamed as Allarus; his wife owned 100% of the Ruppert stock.

17.   Teplen discouraged the investment by Serova in ventures other than Ruppert/Allarus.

18.   Thereafter, Ms. Serova attended three or four meetings with Mr. Eden regarding a possible investment in Allarus.  Teplen was present at each of those meetings.  Allarus was not separately represented by counsel.

19.   Teplen repeatedly represented to Ms. Serova that Teplen was attending these meetings as her attorney, and thus her

7

fiduciary.  Nevertheless, Teplen failed to negotiate any of the terms of the investment on Ms. Serova's behalf and, indeed, Teplen had private discussions with Mr. Eden regarding the investment.  Among other things, plaintiff has learned through prelitigation investigation that Teplen told Mr. Eden that he was surprised that the Serovas did not negotiate the terms of the investment.  Yet, Teplen did not urge his client, Ms. Serova, to undertake any such negotiations, despite the fact that his engagement letter specifically stated that he was retained to "negotiate transactions" on her behalf.

**Serova Makes the Investment in Allarus**

20.     Thereafter, Teplen acted as the sole attorney in the transaction and drafted all the closing papers.  He did so although Teplen was Ms. Serova's lawyer only and was stated to be simply a friend of the Edens.  Indeed, Ms. Serova was informed on numerous occasions that Teplen had no involvement with Allarus whatsoever.

21.     Pursuant to an Agreement among Ms. Serova, Allarus and Barbara Eden dated June 28, 2002, Ms. Serova invested $1,162,000

8

directly into Allarus in exchange for 30% of the outstanding shares of the company.  (Under that Agreement, Allarus used $240,000 of those funds to redeem 30 of the existing 100 shares from Barbara Eden.) At all relevant times M.Eden acted as the responsible officer of Allarus and agent for his wife B. Eden in this transaction. Moreover, the purchase price paid for the redemption of B. Eden's stock in this seamless and interconnected transaction was deposited in a an account jointly owned by the Edens.

**Teplen's Malpractice & Misrepresentations**

22.     Teplen repeatedly advised Serova that, if she made the investment in Mr. Eden's business, she was essentially assured that the desired EB-5 visa would be granted.

23.     Ms. Serova's investment did not have the desired effect of earning an EB-5 visa.  The application was denied on August 10, 2003.

24.     Since learning of the INS' decision, Ms. Serova consulted other counsel regarding EB-5 visas.  Contrary to Teplen's

representations, EB-5 visas are issued in as few as 15% of cases in which they are sought.  Had Ms. Serova known this fact, she would not have invested in Allarus.

25.     Teplen failed to advise Ms. Serova about many of the requirements of obtaining an EB-5 visa – requirements that posed significant hurdles for Ms. Serova's application – until after she had invested in Mr. Eden's business.  Had Ms. Serova been advised that her chances of securing an EB-5 visa were far less than Teplen represented, and had she known all of the requirements of obtaining such a visa, she would not have invested in Mr. Eden's business.

26.     Teplen failed to alert Ms. Serova to the requirement that she file tax returns from the previous five years, despite the fact that Teplen clearly understood that Ms. Serova's parents, who are Russian citizens and who were unlikely to have the required tax documentation, would be funding the investment.

27.    Ms. Serova made the substantial investment discussed above based on Teplen's faulty legal and business advice and representations.

**Teplen's Undisclosed and Unwaived Conflicts**
**and Receipt of Undisclosed Payments from the Edens**

28.    Teplen's advice and legal representation were also inadequate and improper because of his repeated breaches of the Disciplinary Rules governing the conduct of attorneys.


29.    Teplen failed to fully disclose his relationship to Allarus or the Edens as well as Teplen's role in that company.  Ms. Serova's investment in Allarus came about only through Teplen's introduction to the Edens, and, as noted above, Teplen discouraged Ms. Serova's investment in other ventures.


30.    Teplen's interest in Allarus and with the Edens was not, as Teplen repeatedly indicated to Ms. Serova, only as a friend to the Edens.

11

31.      Teplen failed to disclose to Plaintiff that he and Mr. Eden had previously owned and operated a business and that that business had failed or otherwise terminated operations.

32.      Teplen failed to disclose to Plaintiff that as of and at the time of the subject investment Mr. Eden was indebted to Teplen in the approximate amount of $15,000 in connection with their prior business and for health insurance premiums and other amounts Teplen had leant to Eden.

33.      Teplen failed to disclose to Plaintiff that as of and at the time of the subject investment, he had represented Mr. Eden (at least in his capacity as Trustee of a family trust), his mother and grandmother in a number of litigations, and that Teplen had not billed the Eden family for several years in connection therewith.

34.      On or about the week of June 21, 2002 Eden and Teplen met.  In that meeting it was decided that once Plaintiff's investment closed, Eden would pay to Teplen: (a) $100,000 (which Teplen claims was payment of a legal fee on behalf of the other members of Eden's

family in connection with the litigations and related matters that Teplen had represented them); and (b)  $15, 121 on account of the debts then owed by Eden to Teplen.

35.      The payments set forth in paragraph 33 were made by Eden following the closing.

36.      The first such payment was made the day of closing from the Edens' personal funds inasmuch as the structure of the agreement called for the Company to redeem 30% of Mrs. Eden's stock for $240,000 and such sum had been paid on closing.

37.      The second payment was made from Ruppert funds in July 2002.  Teplen improperly accepted this payment from Company funds even though he knew it was on account of a personal debt owed by Eden to him.

38.      Teplen failed to disclose to or advise Plaintiff of his plan to have Eden make the payments set forth above or that such payments were made after closing.

39.     Furthermore, Teplen's illicit and improper involvement with the Edens and the Company continued after the closing and while Teplen was representing Plaintiff.

40.     Allarus' website has stated that Teplen became Executive Vice President of Allarus at about the time Teplen submitted Ms. Serova's EB-5 application.  That fact was never disclosed either in the application or to Ms. Serova by Teplen or the Edens.

41.     Furthermore, Teplen was paid "salary" in the amount of approximately $80,000 from shortly after the investment through the spring of 2003 in the aggregate amount of $80,000.  Despite the provision Teplen placed in the shareholders' agreement between Plaintiff and Mrs. Eden, no Board of Director consent was sought or obtained for this executive compensation paid to Teplen.

42.     Thus, Teplen received nearly $200,000 in undisclosed and improper payments from the funds that he induced Plaintiff to

invest in his client(s)' business as well as upwards of $50,000 in
legal fees that he collected from Plaintiff.

43.      Furthermore, within a month after the Serova
investment was made, Teplen and Allerus jointly executed a lease for
space in the Empire State Building to share common offices.  The
immediate and imminent pendency of this lease and the obvious self
dealing and financial benefit to Teplen was never disclosed by him or
the Edens to Serova and never consented to by Plaintiff.

44.      The lease stipulates annual rent in the first two
years of $195,300.  This financial commitment represents
approximately 50% of the gross annual sales by Allarus, then known as
Ruppert, for the entire year immediately preceding the transaction in
question.  Despite the obvious and important materiality of this
financial commitment by a company which had virtually no working
capital or profit at the time, this transaction, which, according to
common sense and logic, had to have been fully negotiated and known
to defendants at the time of the Serova deal, was not disclosed to
Serova.

45.      Although only Ms. Serova was billed for time spent finalizing the shareholders agreement, the agreement is manifestly one-sided in favor of the Edens/Allarus.  Even in the face of this one-sidedness, the terms of the shareholder agreement were never the subject of negotiation.

46.      Perhaps most significantly, Teplen represented Mr. or Mrs. Eden or their business before, during and after Teplen represented Ms. Serova.  This fact alone gives rise to a conflict of interest.  However, this conflict of interest is more than formalistic – based on Teplen's advice, Ms. Serova made a substantial, and fruitless, investment in a business operated by Teplen's friend and client on less than favorable terms.

47.      Teplen was retained to represent Ms. Serova as a lawyer in the negotiation of the terms of her investment in Allarus. Teplen's representation of Ms. Serova in that regard was compromised as a result of Teplen's relationship, both as a lawyer and creditor, with Michael Eden.

48.      As a result of Teplen's relationship with Mr. Eden, Teplen failed to vigorously represent Ms. Serova with regard to the terms of her investment, and as a result, Ms. Serova's investment was made on legal terms that were decidedly one-sided in favor of Allarus.

49.      The legal advice Teplen gave Ms. Serova regarding the relationships between an investment in Allarus and the likelihood of getting an EB-5 visa was faulty, and it was that legal advice together with the representations and omissions to disclose which caused Ms. Serova to invest in Allarus.

50.      Defendant had a duty to disclose all material facts pertaining to the proposed investment by Serova in Allarus prior to the time such investment was made by the purchase of Allarus' stock described above.  This was particularly true in the circumstances of this case where the investment was being made by a young and unsophisticated college student for purposes of securing permanent residency status.  Defendant was in a superior position of knowledge and access to the facts concerning (a) the prior, planned and ongoing

17

business relationships; (b) the then pending and imminent debts from Eden, planned payments and lease; and (c) the true state of financial affairs and financial prospects of Allarus.

51.     Had Plaintiff been aware of all of the facts hereinabove alleged which were not disclosed to her, she would not have made the investment and purchase of securities at issue herein.

**Events Subsequent to the Investment and Denial of the Visa**

52.     Despite the large infusion of cash represented by Serova's investment in Allarus, the unaudited financial statements of Allarus show that as of December 31, 2002, only six months after Ms. Serova's investment, the Company had shareholders' equity of only $517,443.  This dimunition in shareholder equity obviously resulted from the fact that for the period from June 28 through December 31, 2002, Allarus had a net loss of $406,283.

53.     For the year ended December 31, 2003, the situation was even worse – The Company lost $426,584 and only had $36, 223 on

18

hand at that time.  The Company' financial results have continued
such that it barely breaks even and has no capital on hand.

54.       In effect, Plaintiff's investment had been squandered
by Defendants, the only persons acting as officers or directors of
the company in 18 months.

55.       Despite the provision in the agreement calling for
Serova to be a board member and for the board to fix all executive
compensation, no board meetings were ever convened, despite
Plaintiff's repeated demands that defendants do so and no board
action was ever taken to fix the compensation received by the Edens
or Teplen.

## CLAIM FOR RELIEF

56.  As a result of the attorney-client relationship between
the parties, Teplen had a duty to represent plaintiff with the
reasonable care, skill, and diligence ordinarily possessed and
exercised by ordinary attorneys in similar circumstances.

57.  Throughout his engagement, Teplen represented that he

had a high level of experience in providing immigration and
corporate/investment advice and that he was competent to perform
all the necessary services for Plaintiff in compliance with the
applicable professional standards and the reasonable skill, care
and diligence that members of the legal profession commonly
possess and exercise in similar situations.

58.  The services Teplen provided to Plaintiff were
deficient, inadequate and not competent.

59.  Teplen fell below the standard of care exercised by
lawyers engaged to provide such advice and similar services.

60.  Teplen's conduct was a breach of defendant's duty to
exercise reasonable care, skill, and diligence on plaintiff's
behalf

61.  Defendant negligently drafted plaintiff's agreement, in
that the contract failed to provide adequate safeguards to
Plaintiff who was providing the entirety of the capital for the
corporation and checks and balances against the EdenS, with or

without the assistance of Teplen, in wasting or otherwise
depleting such assets.

62.  Defendant's conduct in improperly advising plaintiff
with respect to the visa application was a breach of defendant's
duty to exercise reasonable care, skill, and diligence on
plaintiff's behalf.

63.  As the attorney for plaintiff, defendant Teplen owed
the plaintiff the duty not to provide legal and non-legal
services in the same or related transaction to the Edens or to
Allarus.

64.  Defendant Teplen breached that duty owed to the
plaintiff.

65.  As the attorney for plaintiff, Teplen owed the
plaintiffs the duty not to represent the plaintiff as her
attorney when the defendant's personal interests or
considerations do or may, with reasonable probability, adversely
affect the legal services provided to the plaintiff.

66.  Defendant Teplen breached this duty.

67.  Defendant Teplen owed plaintiff the duty not to promote, suggest or recommend the investment in Allarus without the full and complete written disclosure of the implications of the business ventures and activities and without effective and informed written consent by plaintiff with respect to the possibility of a conflict of interest.

68.  Defendant Teplen breached this duty.

69.  As the attorney for plaintiff, defendant Teplen owed plaintiff the duty to explain the benefits and importance of obtaining independent legal counsel or other disinterested advice before allowing, permitting or suffering Plaintiff to make the investment in Allarus.

70.  Defendant Teplen breached this duty.

**71.**  As a direct and proximate result of Teplen's breach of his duties and professional negligence, Plaintiff has suffered and will continue to suffer substantial monetary damages, including but not limited to the loss of her investment in Allarus and the inflated and improper legal fees she paid to Defendant.

72.  As a direct and proximate result of defendant's negligent failure to properly advise plaintiff on the visa matter, to properly draft the shareholders' agreement and his failure to inform plaintiff of his self dealing and client relationship with Eden and Allarus, plaintiff sustained damages to be determined at trial but at least in the amount of $1,250,000.

73.  Plaintiff should be awarded compensatory damages in an amount to be proved at trial.

74.  Because of the outrageousness and illegality of Defendant's conduct, Plaintiff seeks exemplary damages from defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that the Court enter judgment awarding Plaintiff:

A.  Damages against defendant Teplen in an amount to be proved, but believed to be at least $1.25 million together with punitive damages;

B.    Costs, expenses and reasonable attorneys' fees to the fullest extent authorized by law;

C.    Such other and further relief which the Court deems necessary and proper at law and in equity.

Dated: New York, New York
       March 7, 2006

                              s/_____
                              THEODORE S.STEINGUT (TSS4231)
                              Attorney for Plaintiff
                              One Whitehall Street
                              17th Floor
                              New York, New York 10004
                              (212) 514-8888